1 | Robin Mashal  (California State Bar No. 205003)
2 | **CENTURY CITY LAW GROUP**
   | **A PROFESSIONAL CORPORATION**
3 | 1875 Century Park East, Sixth Floor
   | Los Angeles, California 90067-2507
4 | Telephone:  (310) 286-2000
   | Facsimile:   (310) 286-2525
5 |
6 | Counsel for Plaintiff,
   | YORAM COHEN
7 |

A6009
90035
DEPT.42
HOLLY E. KENDIG

**FILED**
Superior Court Of California
County Of Los Angeles

AUG 13 2014

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
    Judi Lara

ORIGINAL

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 | COUNTY OF LOS ANGELES, CENTRAL JUDICIAL DISTRICT
10 | STANLEY MOSK COURTHOUSE
11 |

| | |
|---|---|
| YORAM COHEN, an individual, | Case No.:  **BC 5 5 4 5 9 2** |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | (1)  **FRAUD IN INDUCEMENT;** |
| BIRDSBORO KOSHER FARMS CORP., a Pennsylvania Corporation; ISAAC PERLMUTTER, an individual a/k/a Issy Perlmutter; and DOES 1 through 50, inclusive, | (2)  **BREACH OF WRITTEN CONTRACT;** |
| | (3)  **MONEY HAD AND RECEIVED;** |
| Defendants. | (4)  **ACCOUNT STATED;** |
| | (5)  **BREACH OF CORPORATE GUARANTY;** |
| | (6)  **RESTITUTION;** |
| | (7)  **BREACH OF WRITTEN CONTRACT;** |
| | (8)  **MONEY HAD AND RECEIVED;** |
| | (9)  **ACCOUNT STATED;** |
| | (10)  **BREACH OF CORPORATE GUARANTY; AND** |
| | (11)  **RESTITUTION** |
| | [Unlimited Jurisdiction] |

CIT/CASE: LEA/DEF#: BC554592
RECEIPT #: CCH520072111
DATE PAID: 08/13/14
PAYMENT: $435.00
RECEIVED:   04:12 PM  310
CHECK:   $435.00
CASH:   $0.00
CHANGE:   $0.00
CARD:   $0.00
        $0.00

-1-

COMPLAINT FOR DAMAGES

08/13/2014

Plaintiff Alleges:

<b><u>GENERAL ALLEGATIONS:</u></b>

1.    Plaintiff YORAM COHEN, an individual, is and was at all relevant times a resident of Los Angeles County, California.

2.    Plaintiff is informed and believes and based thereon alleges that defendant, BIRDSBORO KOSHER FARMS CORP. ("BKF") is a Pennsylvania Corporation.

3.    Plaintiff is informed and believes and based thereon alleges that defendant, ISAAC PERLMUTTER, also known as Issy Perlmutter ("ISSY"), is an individual.

4.    Plaintiff is informed and believes, and on that basis alleges, pursuant to Section 474 of the <u>California Code of Civil Procedure</u>, that the fictitiously named defendants sued in this Complaint as DOES 1 through 50, inclusive, and each of them, were in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged in this Complaint. Plaintiff does not currently know the true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise, and Plaintiff will seek leave of court to amend this Complaint to assert the true names and capacities of such fictitiously named defendants when Plaintiff has ascertained them. For convenience, each reference to "Defendants" in this Complaint shall also refer to the DOE defendants, and each of them, together with the named defendants.

5.    Plaintiff is informed and believes and based thereon alleges that at all times mentioned herein, BKF, ISSY and DOES 1 through 50 were, each the agent, servant, employee, joint venturer, partner and/or co-conspirators of one another, and to the extent of doing the acts alleged herein, each acted within the course and scope of said agency, service, employment, joint venture, partnership and/or conspiracy.

6.    Plaintiff is informed and believes and based thereon alleges that during all relevant times BKF, ISSY and DOES 1 through 50 are, and were, the alter egos of each other, and the actions, representations, and other conduct alleged herein of the one were and are the actions, representations, and conduct of the others, and each of them is and was bound thereby as having done, made, and/or committed the same directly. At all times mentioned herein, these defendants' conduct is and was the action, representation, and conduct of each and all other such

-2-

CENTURY CITY LAW GROUP<br>A PROFESSIONAL CORPORATION

defendants, and each such defendant is and was to be obligated, responsible, held liable, and charged thereby.

7.     Plaintiff is informed and believes that the "corporate" form of any corporate defendants should be disregarded, and the remaining defendants, and each of them, should be held liable for all obligations of the corporate defendants hereunder alleged, due to fraud, defalcation, undercapitalization, lack of observance of corporate formalities, unity of interest and ownership, abuse of corporate privilege, undercapitalization, transfer of corporate assets without adequate consideration, domination, intermingling of assets, use of corporation as mere shell and instrumentality, and/or improper distribution of corporate assets.

8.     This action is not subject to Sections 1812.10 or 2984.4 of the <u>California Civil Code</u>.  This action is subject to Section 395 of the <u>California Code of Civil Procedure</u>.  The obligations were entered into in, and/or when the obligations were entered into the defendant(s) resided in, and/or when this action was commenced the defendant(s) resided in, and/or the obligations herein alleged were to be performed in this judicial district and/or Defendants' tortious conduct caused injuries within this judicial district.

<u>**GENERAL ALLEGATIONS**</u>

9.     Plaintiff is informed and believes and thereon alleges that at all times relevant to this Complaint, ISSY was, and still is, a major shareholder, officer and director of BKF.  Plaintiff is informed and believes, and thereon alleges, that all representations made by ISSY were made both in his personal capacity and in in ISSY's capacity as the authorized representative of BKF.

10.    On or about January 2013, ISSY and BKF approached Plaintiff and told Plaintiff that BKF is in need of a $100,000.00 short-term loan (the "First Loan"), based on which BKF would grant Plaintiff an Exclusive Distributorship Agreement for the sale of BKF's goods throughout Los Angeles County and Orange County, California.

11.    Plaintiff was unwilling to make the loan to a newly formed business.  In order to induce Plaintiff to make this loan, ISSY and BKF represented to Plaintiff that ISSY and BKF are in strong financial health.  As well, Defendants offered that ISSY would sign the promissory note for the loan, BKF would provide corporate guaranty on the loan, and that 15% of the BKF shares of stock will be issued to Plaintiff as collateral for the repayment of the loan.  Plaintiff relied on Defendants' representations in agreeing to make the First Loan to them.

-3-

COMPLAINT FOR DAMAGES

12.   On or about February 4, 2013, ISSY and BKF respectively signed a Secured Promissory Note and Corporate Guaranty (the "First Loan Agreements"), in order to borrow the $100,000 from Plaintiff, and Plaintiff transmitted $100,000 to Defendants via an electronic fund transfer.   True copies of the First Loan Agreements are attached hereto as "**Exhibit 1**" and incorporated herein by this reference.

13.   On or about February 4, 2013, BKF signed an Exclusive Distributorship Agreement in favor of Plaintiff.

14.   On or about June 2013, ISSY approached Plaintiff saying BKF is in need of an additional short-term $100,000.00 loan (the "Second Loan").   ISSY and BKF assured Plaintiff that the First Loan will be timely repaid and that BKF and ISSY have the financial ability to repay the Second Loan.   ISSY and BKF issued and delivered to Plaintiff check number 1013 in the amount of $100,000 ("Check 1013") for repayment of the First Loan's principal balance. Plaintiff relied on ISSY and BKF's representations in agreeing to make the Second Loan.

15.   On or about June 11, 2013, ISSY and BKF respectively signed a Secured Promissory Note and Corporate Guaranty (the "Second Loan Agreements"), in order to borrow an additional $100,000 from Plaintiff, and Plaintiff transmitted $100,000 to Defendants via an electronic fund transfer.   True copies of the Second Loan Agreements are attached hereto collectively as "**Exhibit 2**" and incorporated herein by this reference.

16.   Plaintiff deposited Check 1013, but the bank returned Check 1013 to Plaintiff unpaid with the notation "CLOSED ACCOUNT, DO NOT RE-DEPOSIT."   Plaintiff is informed and believes that at the time Defendants issued Check 1013 to Plaintiff the account on which the check was drawn was closed and/or Defendants closed the account on which Check 1013 was issued in order to prevent plaintiff from negotiating Check 1013.

## FIRST CAUSE OF ACTION:

### FRAUD IN INDUCEMENT

### (Against all Defendants)

17.   Plaintiff realleges paragraphs 1 through 16 and incorporates them herein by reference as though restated herein in full.

18.   On or about January 2013, ISSY and BKF approached Plaintiff and told Plaintiff

-4-

COMPLAINT FOR DAMAGES

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION

that BKF is in need of a $100,000.00 short-term loan (the "First Loan"), based on which BKF would grant Plaintiff an Exclusive Distributorship Agreement for the sale of BKF's products in all portions of Los Angeles County and Orange County, California. In order to induce Plaintiff to make this loan, ISSY and BKF represented to Plaintiff that ISSY and BKF are in strong financial health. As well, Defendants offered that ISSY would sign the promissory note for the loan, BKF would provide corporate guaranty on the loan, and that 15% of the BKF shares of stock will be issued to Plaintiff as collateral for the repayment of the $100,000 loan. Plaintiff relied on Defendants' representations in agreeing to make the First Loan to them.

19.     On or about June 2013, BKF and ISSY approached Plaintiff for an additional short-term $100,000.00 loan (the "Second Loan"). BKF and ISSY assured Plaintiff that the First Loan will be timely repaid and that BKF and ISSY have the financial ability to repay the Second Loan. ISSY and BKF issued and delivered to Plaintiff check number 1013 in the amount of $100,000 ("Check 1013") for repayment of the principal balance of the First Loan. Plaintiff relied on ISSY and BKF's representations in agreeing to make the Second Loan.

20.     At the time BKF and ISSY made the above representations to Plaintiff, BKF and ISSY knew these representations to be false and made these representations with the intention to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Plaintiff would so act. The true facts were that BKF and ISSY were not in good financial health, and BKF and ISSY did not intend to repay Plaintiff for the moneys they were borrowing from Plaintiff.

21.     One indication of defendants' fraudulent intent is that defendants issued Check 1013 to Plaintiff on a closed bank account and/or Defendants closed the bank account on which Check 1013 was issued before Plaintiff could negotiate Check 1013. Another indication of defendants' fraudulent intent is that they never delivered to Plaintiff a certificate(s) evidencing the 15% of shares of BKF that Plaintiff, as Defendants had promised under the terms of the Security Promissory Note (for First Loan) and under Secured Promissory Note (for Second Loan).

22.     Plaintiff, at the time these representations were made by BKF and ISSY, and at the time the Plaintiff took the actions herein alleged, was ignorant of the falsity of the representations of BKF and ISSY, and Plaintiff believed those representations to be true.

-5-

COMPLAINT FOR DAMAGES

23.     In reliance on BKF and ISSY's representations, and without the knowledge of other facts concealed, Plaintiff was induced to make the First Loan in the principal amount of $100,000 to defendants.  Also, in reliance on BKF and ISSY's representations and the delivery of Check 1013, and without the knowledge of other facts concealed, Plaintiff was induced to make the Second Loan in the principal amount of $100,000 to defendants.

24.     Plaintiff is entitled to pre-judgment interest at the rate of ten percent (10%) per annum pursuant to Section 3289(b) of the <u>California Civil Code</u>, from and after February 4, 2013 for the First Loan, and from and after June 11, 2013 for the Second Loan.

25.     The aforementioned conduct of Defendants was intentional misrepresentations, deceit, or concealment of a material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving the Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION:
### BREACH OF WRITTEN CONTRACT
### (Against ISSY and DOES 1-50)

26.     Plaintiff realleges paragraphs 1 through 25 and incorporates them herein by reference as though restated herein in full.

27.     Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms of the Secured Promissory Note (for the First Loan).

28.     Within the past four years, ISSY breached the terms of the Secured Promissory Note (for First Loan) by failing to repay to Plaintiff the loan or the accrued interest.

29.     Based on the terms of the Secured Promissory Note (for the First Loan), Plaintiff is entitled to interest at the rate of four and one-half (4.50%) percent per annum on the loaned funds from and after February 4, 2013, and is entitled to attorney's fees in in the event of borrower's breach.

30.     As a result of Defendants' breach of the Secured Promissory Note (for the First

-6-

COMPLAINT FOR DAMAGES

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION

Loan), Plaintiff has been damaged in the principal sum of no less than $100,000, together with interest at the contract and statutory rate, and general damages in form of loss of goodwill and loss of profits, and other consequential and incidental damages, and the attorney fees and costs incurred in recovering these damages.

**THIRD CAUSE OF ACTION:**

**COMMON COUNT FOR MONEY HAD AND RECEIVED**

**(Against ISSY and DOES 1-50)**

31.   Plaintiff realleges paragraphs 1 through 30 and incorporates them herein by reference as though restated in full.

32.   Within the past four years, Defendants became indebted to Plaintiff in the sum of $100,000, for money had and received by Defendants for the use and benefit of Plaintiff.

33.   Plaintiff has repeatedly demanded payment from Defendants with no response by Defendants.

34.   Plaintiff is entitled to pre-judgment interest at the rate of ten percent (10%) per annum pursuant to Section 3289(b) of the California Civil Code from and after February 4, 2013.

35.   Plaintiff has been damaged in the principal sum of no less than $100,000 (loaned under the First Loan), together with interest at statutory rate, and general, consequential and incidental damages and costs incurred in recovering these damages.

**FOURTH CAUSE OF ACTION:**

**COMMON COUNT FOR ACCOUNT STATED**

**(Against ISSY and DOES 1-50)**

36.   Plaintiff realleges paragraphs 1 through 35 and incorporates them herein by reference as though restated in full.

37.   Within the past four years, an account was stated in writing between Plaintiff and Defendants.  On this statement, a principal balance of $100,000 was owed to Plaintiff from Defendants.

38.   Defendants agreed to pay this balance.

39.   Plaintiff is entitled to pre-judgment interest at the rate of ten percent (10%) per annum pursuant to Section 3289(b) of the California Civil Code from and after February 4, 2013.

-7-




40.     Plaintiff has been damaged in the principal sum of no less than $100,000 (loaned under the First Loan), together with interest at statutory rate, and general, consequential and incidental damages and costs incurred in recovering these damages.

### FIFTH CAUSE OF ACTION:
### BREACH OF CORPORATE GUARANTY
### (Against BKF and DOES 1-50)

41.     Plaintiff realleges paragraphs 1 through 40 and incorporates them herein by reference as though restated herein in full.

42.     Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms of the Corporate Guaranty (for the First Loan).

43.     Within the past four years, BKF breached the terms of the Corporate Guaranty (for First Loan) by failing to repay to Plaintiff the loan or the accrued interest.

44.     Based on the terms of the Corporate Guaranty (for the First Loan), Plaintiff is entitled to interest at the rate of four and one-half (4.50%) percent per annum on the loaned funds from and after February 4, 2013, and is entitled to attorney's fees in in the event of borrower's breach.

45.     As a result of Defendants' breach of the Corporate Guaranty (for the First Loan), Plaintiff has been damaged in the principal sum of no less than $100,000, together with interest at the contract and statutory rate, and general damages in form of loss of goodwill and loss of profits, and other consequential and incidental damages, and the attorney fees and costs incurred in recovering these damages.

### SIXTH CAUSE OF ACTION:
### RESTITUTION
### (Against all Defendants)

46.     Plaintiff realleges paragraphs 1 through 45 and incorporates them herein by reference as though restated in full.

47.     By reason of receiving cash and other property of Plaintiff, without consideration, Defendants have been unjustly enriched in an amount according to proof at trial, but not less than

-8-

COMPLAINT FOR DAMAGES

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION



$100,000 concerning the First Loan.

48.    To permit Defendants to retain any of the proceeds from their wrongful conduct would permit Defendants to profit from their own wrongdoing and to be unjustly enriched at the expense of Plaintiff.

49.    To avoid unjust enrichment, Defendants and each of them should be required to make restitution to Plaintiff of all cash and property of Plaintiff they have taken, as well as all profits and proceeds received from such cash and property prior to the entry of judgment in this action.

50.    Plaintiff further request for a court order directing Defendants and each of them to hold the cash and property they received from Plaintiff (on the First Loan), and any profits or proceeds derived therefrom, as a constructive trustee for Plaintiff.

### SEVENTH CAUSE OF ACTION:

### BREACH OF WRITTEN CONTRACT

### (Against ISSY and DOES 1-50)

51.    Plaintiff realleges paragraphs 1 through 50 and incorporates them herein by reference as though restated herein in full.

52.    Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms of the Secured Promissory Note (for the Second Loan).

53.    Within the past four years, ISSY breached the terms of the Secured Promissory Note (for Second Loan) by failing to repay to Plaintiff the loan or the accrued interest.

54.    Based on the terms of the Secured Promissory Note (for the Second Loan), Plaintiff is entitled to interest at the rate of four and one-half (4.50%) percent per annum on the loaned funds from and after June 11, 2013, and is entitled to attorney's fees in in the event of borrower's breach.

55.    As a result of Defendants' breach of the Secured Promissory Note (for the Second Loan), Plaintiff has been damaged in the principal sum of no less than $100,000, together with interest at the contract and statutory rate, and general damages in form of loss of goodwill and loss of profits, and other consequential and incidental damages, and the attorney fees and costs

-9-

COMPLAINT FOR DAMAGES

incurred in recovering these damages.

## EIGHTH CAUSE OF ACTION:

## COMMON COUNT FOR MONEY HAD AND RECEIVED

### (Against ISSY and DOES 1-50)

56.     Plaintiff realleges paragraphs 1 through 55 and incorporates them herein by reference as though restated in full.

57.     Within the past four years, Defendants became indebted to Plaintiff in the sum of $100,000, for money had and received by Defendants for the use and benefit of Plaintiff.

58.     Plaintiff has repeatedly demanded payment from Defendants with no response by Defendants.

59.     Plaintiff is entitled to pre-judgment interest at the rate of ten percent (10%) per annum pursuant to Section 3289(b) of the California Civil Code from and after June 11, 2013.

60.     Plaintiff has been damaged in the principal sum of no less than $100,000 (loaned under the Second Loan), together with interest at statutory rate, and general, consequential and incidental damages and costs incurred in recovering these damages.

## NINTH CAUSE OF ACTION:

## COMMON COUNT FOR ACCOUNT STATED

### (Against ISSY and DOES 1-50)

61.     Plaintiff realleges paragraphs 1 through 60 and incorporates them herein by reference as though restated in full.

62.     Within the past four years, an account was stated in writing between Plaintiff and Defendants.   On this statement, a principal balance of $100,000 was owed to Plaintiff from Defendants.

63.     Defendants agreed to pay this balance.

64.     Plaintiff is entitled to pre-judgment interest at the rate of ten percent (10%) per annum pursuant to Section 3289(b) of the California Civil Code from and after June 11, 2013.

65.     Plaintiff has been damaged in the principal sum of no less than $100,000 (loaned under the Second Loan), together with interest at statutory rate, and general, consequential and incidental damages and costs incurred in recovering these damages.

-10-

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION



## TENTH CAUSE OF ACTION:

### BREACH OF CORPORATE GUARANTY

#### (Against BKF and DOES 1-50)

66.     Plaintiff realleges paragraphs 1 through 65 and incorporates them herein by reference as though restated herein in full.

67.     Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms of the Corporate Guaranty (for the Second Loan).

68.     Within the past four years, BKF breached the terms of the Corporate Guaranty (for Second Loan) by failing to repay to Plaintiff the loan or the accrued interest.

69.     Based on the terms of the Corporate Guaranty (for the Second Loan), Plaintiff is entitled to interest at the rate of four and one-half (4.50%) percent per annum on the loaned funds from and after June 11, 2013, and is entitled to attorney's fees in in the event of borrower's breach.

70.     As a result of Defendants' breach of the Corporate Guaranty (for the Second Loan), Plaintiff has been damaged in the principal sum of no less than $100,000, together with interest at the contract and statutory rate, and general damages in form of loss of goodwill and loss of profits, and other consequential and incidental damages, and the attorney fees and costs incurred in recovering these damages.

## ELEVENTH CAUSE OF ACTION:

### RESTITUTION

#### (Against all Defendants)

71.     Plaintiff realleges paragraphs 1 through 70 and incorporates them herein by reference as though restated in full.

72.     By reason of receiving cash and other property of Plaintiff, without consideration, Defendants have been unjustly enriched in an amount according to proof at trial, but not less than $100,000 concerning the First Loan.

73.     To permit Defendants to retain any of the proceeds from their wrongful conduct would permit Defendants to profit from their own wrongdoing and to be unjustly enriched at the

-11-

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION

expense of Plaintiff.

74.     To avoid unjust enrichment, Defendants and each of them should be required to make restitution to Plaintiff of all cash and property of Plaintiff they have taken, as well as all profits and proceeds received from such cash and property prior to the entry of judgment in this action.

75.     Plaintiff further request for a court order directing Defendants and each of them to hold the cash and property they received from Plaintiff (on the Second Loan), and any profits or proceeds derived therefrom, as a constructive trustee for Plaintiff.

## PRAYER

WHEREFORE, Plaintiff prays judgment against the defendants, and against each of them, jointly and severally, as follows:

**As to First Cause of Action for Fraud in Inducement:**

1.     For restitution to Plaintiff of all monies, goods and/or wares Defendants received from Plaintiff, and the profits and proceeds therefrom, in no event less than $200,000;

2.     For punitive and exemplary damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

**As to Second Cause of Action for Breach of Written Contract:**

3.     For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000;

4.     For reasonable attorney's fees;

**As to Third Cause of Action for Money Had and Received:**

5.     For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

**As to Fourth Cause of Action for Account Stated:**

6.     For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

**As to Fifth Cause of Action for Breach of Corporate Guaranty:**

7.     For compensatory damages to Plaintiff in amounts according to proof at trial, in

-12-

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION



no event less than $100,000.00;

8.    For reasonable attorney's fees;

**As to Sixth Cause of Action for Restitution:**

9.    For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

10.   For a court order directing Defendants and each of them to hold Plaintiff's monies, goods and/or wares, and any profits or proceeds derived therefrom, as a constructive trustees for Plaintiff;

**As to Seventh Cause of Action for Breach of Written Contract:**

11.   For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000;

12.   For reasonable attorney's fees;

**As to Eighth Cause of Action for Money Had and Received:**

13.   For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

**As to Ninth Cause of Action for Account Stated:**

14.   For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

**As to Tenth Cause of Action for Breach of Corporate Guaranty:**

15.   For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

16.   For reasonable attorney's fees;

**As to Eleventh Cause of Action for Restitution:**

17.   For compensatory damages to Plaintiff in amounts according to proof at trial, in no event less than $100,000.00;

18.   For a court order directing Defendants and each of them to hold Plaintiff's monies, goods and/or wares, and any profits or proceeds derived therefrom, as a constructive trustees for Plaintiff;

//

CENTURY CITY LAW GROUP
A PROFESSIONAL CORPORATION

-13-

COMPLAINT FOR DAMAGES

**As to All Causes of Action:**

19.   For general damages to Plaintiff according to proof at trial;

20.   For interest to Plaintiff on the above damages at the contract rate, or the highest rate allowable by law;

21.   For costs of suit; and

22.   For such other and further remedy as the Court may deem just and proper.


Dated:  August 11, 2014                    **CENTURY CITY LAW GROUP, APC**

                                    By:  _____
                                           Robin Mashal
                                           Attorneys for Plaintiff
                                           YORAM COHEN

-14-

COMPLAINT FOR DAMAGES

EXHIBIT 1

# Exhibit 1

## SECURED PROMISSORY NOTE
## AND CORPORATE GUARANTY

$100,000.00
4.50%

February 4, 2013
Birdsboro, Pennsylvania

FOR VALUE RECEIVED, the sufficiency of which is hereby acknowledged, Isaac Perlmutter, an individual, whose residence address is 75 Carlton Road, Monsey, New York 10952 ("Maker"), hereby unconditionally promises to pay to Yoram Cohen, an individual ("Holder"), or order, the principal sum of On Hundred Thousand Dollars ($100,000.00) in lawful money of the United States of America, together with interest from the date of this Note on unpaid principal owing from time to time at the rate of four and one-half percent (4.50%) per annum. The principal and all accrued interest shall be due in one lump sum on June 28, 2013.

All payments to be made by the Maker under this Note shall be made in lawful money of the United States of America, in immediately available and freely transferable funds no later than 12:00 Noon Pacific Standard Time on the date which due, without set-off, counterclaim, deduction, withholdings, restrictions and conditions of any nature.

This Note may be prepaid in whole or in part, without penalty, at the option of the Maker and without the consent of the Holder. All payments shall be applied first to accrued and unpaid interest and then to principal balance outstanding. All payments under this Note shall be paid to Holder at 8730 Pico Boulevard, Los Angeles, California 90035, or at such other address as Holder shall direct Maker in writing.

In addition to, and without waiving or modifying other events of default as defined in this Note the following will constitute events of default under this Note: (a) failure to pay any amount of principal or interest when due under this Note, (b) failure to perform any other covenant of Maker under this Note, and (c) the declaration of bankruptcy, insolvency, or appointment of receiver by the Maker, or either one of them.

Should an event of default occur as provided in this Note, then the entire outstanding principal balance of the indebtedness evidence by this Note, together with all unpaid interest, shall become immediately due and payable, at the option of the Holder. In any such event, Maker agrees to pay all costs of collection, including all attorney's fees. Failure to exercise such option shall not constitute a waiver of the right to exercise it in the event of a continuing or subsequent default.

This Note shall be governed by the laws of the State of California excluding its conflict of laws rules. The exclusive jurisdiction and venue of any legal action instituted by any party to this Note shall be the Los Angeles County Superior Court, California. Maker submits to the non-exclusive jurisdiction of the State and Federal Courts located within Los Angeles County, California.

PAGE 1 OF 5

ISAAC PERLMUTTER                    BIRDBORO KOSHER FARMS CORP.

Maker waives presentment, protest and demand, notice of protest, notice of demand and dishonor, and notice of nonpayment of this Note. Maker expressly agrees that this Note or any payment under this Note may be extended by Holder, from time to time, without in any way affecting the liability of the Maker.

The prevailing party in any action (i) to collect payment on this Note, (ii) in connection with any dispute that arises as to its enforcement, validity or interpretation, whether or not legal action is instituted or prosecuted to judgment, or (iii) to enforce any judgment obtained in any related legal proceeding shall be entitled to all costs and expenses incurred, including attorney's fees.

If any provision of any word, term, clause, or part of any provision of this Note shall be invalid for any reason, the same shall be ineffective, but the remainder of this Note and of the provision shall not be affected and shall remain in full force and effect.

Any of the terms or conditions of this Note may be waived by Holder, but no such waiver shall affect or impair the rights of Holder to require observance, performance or satisfaction, either of that term or condition as it applies on a subsequent occasion or of any other term or condition of this Note.

Maker understands that Holder had to take out a loan at the rate of 4.50% in order to be able to make this loan to Makers, and that is the reason why this interest rate is being herein. The interest rate provisions in this Note are consistent with Jewish laws "Al Pi Heter Iska."

The Maker hereby represents and warrants to Holder that the Maker is currently in strong financial health.

BKF is a newly formed corporation in need of a loan, and Maker is a major shareholder of BKF. The Maker is issuing fifteen percent (15%) of the total shares of stock of BKF to Holder as security for this Note. Concurrently with this Promissory Note, Maker shall issue a certificate of these shares in favor of Holder. Maker covenants to Holder that so long as any portion of the liabilities herein are outstanding, the 15% shares given to Holder shall not be diluted.

Wherefore, the Maker hereby executes this Note.

"Maker"

ISAAC PERLMUTTER,
An Individual

[Corporate Guaranty on pages 3 through 5]

PAGE 2 OF 5

ISAAC PERLMUTTER                    BIRDBORO KOSHER FARMS CORP.

## CORPORATE GUARANTY

WHEREAS, Isaac Perlmutter ("Maker") wishes to borrow money from Yoram Cohen ("Holder") pursuant to the foregoing Secured Promissory Note, dated February 4, 2013 (the "Note"), and Maker intends to make that money available to Birdsboro Kosher Farms Corporation, a Pennsylvania Corporation, with its principal place of business located at 1100 Lincoln Road, Birdsboro, Pennsylvania 19508 ("Guarantor");

WHEREAS, Holder is unwilling to extend such loans to Maker unless and until Guarantor guaranties the obligations of Maker under the Promissory Note;

WHEREAS, Maker is a major shareholder of Guarantor; and

WHEREAS, the Guarantor is willing to guaranty Maker's obligations under the above Promissory Note.

NOW THEREFORE, the undersigned, Guarantor guaranty Maker's obligations under the above Promissory Note in favor of Holder, as follows:

1. **Birdsboro Kosher Farms Corporation's Guaranty** – For consideration, the adequacy and sufficiency of which is acknowledged, the undersigned Guarantor unconditionally guaranties and promises (a) to pay to Holder on demand, in lawful United States money, on hundred percent of the Obligations, and (b) to perform on hundred percent of the undertakings of Maker in connection with the Obligations. "Obligations" is used in its most comprehensive sense and includes any and all debts, liabilities, rental obligations, and other obligations and liabilities of every kind of Maker to Holder as provided in the Note executed concurrently herewith, together with all expenses of, for and incidental to collection, including reasonable attorneys' fees.

2. **Authorization** – Guarantor hereby authorizes Holder, without notice and without affecting Guarantor's liability under this corporate guaranty, from time to time, whether before or after any revocation of this corporate guaranty, to (a) renew, compromise, extend, accelerate, release, subordinate, waive, amend and restate, or otherwise amend or change the interest rate, time or place for payments or any other terms of all or any part of the Obligations; (b) accept delinquent or partial payments on the Obligations; (c) take or not take security or other credit support for this corporate guaranty or for all or any part of the Obligations, and exchange, enforce, waive, release, subordinate, fail to enforce or perfect, sell, or otherwise dispose of any such security or credit support; (d) apply proceeds of any such security or credit support and direct the order or manner of its sale or enforcement as Bank, at its sole discretion, may determine; and (e) release or substitute Maker or any guarantor or other person or entity liable on the Obligations.

4. **Waivers** – To the maximum extent permitted by law, Guarantor hereby waives (a) all rights to require Holder to proceed against Maker or proceed against, enforce or exhaust any security for the Obligations or to marshall assets or to pursue any other remedy in Holder's power whatsoever; (b) all defenses arising by reason of any disability or other defense of Maker,

ISAAC PERLMUTTER                    BIRDSBORO KOSHER FARMS CORP.

the cessation for any reason of the liability of Maker, any defense that any other indemnity, guaranty or security was to be obtained, any claim that Holder has made Guarantor's obligations more burdensome or more burdensome than Maker's obligations, and the use of any proceeds of the Obligations other than as intended or understood by Holder or Guarantor; (c) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this corporate guaranty and of the existence or creation of new or additional Obligations, and all other notices or demands to which Guarantor might otherwise be entitled; (d) all conditions precedent to the effectiveness of this Guaranty; (e) all rights to file a claim in Connection with the Obligations in an Insolvency Proceeding filed by or against Maker; (f) all rights to require Holder to enforce any of its remedies; and (g) until the Obligations are satisfied or fully paid, with such payment not subject to return, (i) all rights of subrogation, indemnification or reimbursement, (ii) all rights of recourse to tiny assets or property of Maker, or to any collateral or credit support for the Obligations, (iii) all rights to participate in or benefit from any security or credit support Holder may have or acquire, and (iv) all rights, remedies and defenses Guarantor may have or acquire against Maker. Holder may foreclose, either by judicial foreclosure or by exercise of power of sale, any deed of trust which secures any Obligations, and even though such foreclosure or exercise may destroy or diminish Guarantor's rights against Maker, Guarantor shall remain liable for any part of the Obligations remaining unpaid after foreclosure.

5.  **Guarantor to Keep Informed** – Guarantor warrants having established with Maker adequate means of obtaining, on an ongoing basis, such information as Guarantor may require concerning all matters bearing on the risk of nonpayment or nonperformance of the Obligations. Guarantor assumes sole, continuing responsibility for obtaining such information from sources other than from Holder. Holder has no duty to provide any information to Guarantor until Holder receives Guarantor's written request or specific information in Holder's possession and Maker has authorized Holder to disclose such information to Guarantor.

6.  **Subordination** – All obligations of Maker to Guarantor which presently or in the future may exist ("Guarantor's Claims") are hereby subordinated to the Obligations. At Holder's request, Guarantor's Claims will be enforced and performance thereon received by Guarantor only as a trustee for Holder, and Guarantor will promptly pay over to Holder all proceeds recovered for application to the Obligations without reducing or affecting Guarantor's liability under other provisions of this corporate guaranty.

7.  **Counsel Fees and Costs** – The prevailing party shall be entitled to attorney's fees (including a reasonable allocation for Holder's internal counsel) and all other costs and expenses which it may incur in connection with the enforcement or preservation of its rights under, or defense of, this corporate guaranty or in connection with any other dispute or proceeding relating to this corporate guaranty whether or not incurred in any Insolvency Proceeding, arbitration, litigation or other proceeding.

8.  **Warranty of Authority** – Guarantor represents and warrants that Guarantor has the corporate power to enter into this corporate guaranty and to carry out its obligations hereunder. The execution and delivery of this corporate guaranty and the performance of the Guarantor's obligations hereunder have been duly authorized by the Board of Directors of the

PAGE 4 OF 5

ISAAC PERLMUTTER                    BIRDBORO KOSHER FARMS CORP

Guarantor, and no other corporate proceedings on the part of the Guarantor are necessary to authorize such execution, delivery and performance. This corporate guaranty has been duly executed by the Guarantor and is the legal, valid and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms.

9.    Notice – Any notice, including notice of revocation, given by any party under this corporate guaranty shall be effective only upon its receipt by the other party and only if (a) given in writing and (b) personally delivered or sent by United States mail, postage prepaid, and addressed to Holder or Guarantor at their respective addresses indicated below. Guarantor and Holder may change the place to which notices, requests, and other communications are to be sent to them by giving written notice of that change to the other.

10.    California Law to Apply – This corporate guaranty shall be governed by and construed according to the laws of California, and Guarantor submits to the non-exclusive jurisdiction of the state or federal courts in California.

11.    Interest on Loan – The interest rate provisions applicable to this corporate guaranty are consistent with Jewish laws "Al Pi Heter Iska."

"Guarantor"
**BIRDSBORO KOSHER FARMS CORP.**

By: _____

     Isaac Perlmutter

Its:    Chief Executive Officer

PAGE 5 OF 5

ISAAC PERLMUTTER            BIRDSBORO KOSHER FARMS CORP.

FedEx Express

08/13/2014

TUE - 18 JUN 10:30A
PRIORITY OVERNIGHT

TRK# 8025 2896 4934

NC CIBA

90067
CA-US
LAX

**Recipient's Copy**

FedEx Express US Airbill

NEW Package

FedEx Tracking Number: 8025 2896 4934

**1 From**
Date: 6/17/13
Sender's Name: Issac Perlmutter   Phone: 561 40'-6001
Company: Burdaro Kosher Farms Corp
Address: 1160 Lincoln Rd
City: Burdaro   State: PA   ZIP: 19518

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name: Robins Mistral   Phone: 310 286 2000
Company: Century City Law Group APC
Address: 1875 Century Park East 6 th FL
City: Los Angeles   State: CA   ZIP: 00067

**4 Express Package Service**

**5 Packaging**
☒ FedEx Envelope

**6 Special Handling and Delivery Signature Options**

545
544
FZ

B
4934
06.18

**7 Payment**   Bill to:
☒ Sender

8025 2896 4934

644

**EXHIBIT 2**

# Exhibit 2

08/13/2014

## SECURED PROMISSORY NOTE
## AND CORPORATE GUARANTY
(Second)

$100,000.00                                                              June 11, 2013
4.50%                                                          Birdsboro, Pennsylvania

FOR VALUE RECEIVED, the sufficiency of which is hereby acknowledged, Isaac Perlmutter, an individual, whose residence address is 75 Carlton Road, Monsey, New York 10952 ("Maker"), hereby unconditionally promises to pay to Yoram Cohen, an individual ("Holder"), or order, the principal sum of On Hundred Thousand Dollars ($100,000.00) in lawful money of the United States of America, together with interest from the date of this Note on unpaid principal owing from time to time at the rate of four and one-half percent (4.50%) per annum. The principal and all accrued interest shall be due in one lump sum on July 11, 2013.

All payments to be made by the Maker under this Note shall be made in lawful money of the United States of America, in immediately available and freely transferable funds no later than 12:00 Noon Pacific Standard Time on the date which due, without set-off, counterclaim, deduction, withholdings, restrictions and conditions of any nature.

This Note may be prepaid in whole or in part, without penalty, at the option of the Maker and without the consent of the Holder. All payments shall be applied first to accrued and unpaid interest and then to principal balance outstanding. All payments under this Note shall be paid to Holder at 8730 Pico Boulevard, Los Angeles, California 90035, or at such other address as Holder shall direct Maker in writing.

In addition to, and without waiving or modifying other events of default as defined in this Note the following will constitute events of default under this Note:  (a) failure to pay any amount of principal or interest when due under this Note, (b) failure to perform any other covenant of Maker under this Note, and (c) the declaration of bankruptcy, insolvency, or appointment of receiver by the Maker, or either one of them.

Should an event of default occur as provided in this Note, then the entire outstanding principal balance of the indebtedness evidence by this Note, together with all unpaid interest, shall become immediately due and payable, at the option of the Holder. In any such event, Maker agrees to pay all costs of collection, including all attorney's fees. Failure to exercise such option shall not constitute a waiver of the right to exercise it in the event of a continuing or subsequent default.

This Note shall be governed by the laws of the State of California excluding its conflict of laws rules. The exclusive jurisdiction and venue of any legal action instituted by any party to this Note shall be the Los Angeles County Superior Court, California. Maker submits to the non-exclusive jurisdiction of the State and Federal Courts located within Los Angeles County, California.

**PAGE 1 OF 5**
(2ND PROMISSORY NOTE)            ISAAC PERLMUTTER            BIRDBORO KOSHER FARMS CORP.

Maker waives presentment, protest and demand, notice of protest, notice of demand and dishonor, and notice of nonpayment of this Note. Maker expressly agrees that this Note or any payment under this Note may be extended by Holder, from time to time, without in any way affecting the liability of the Maker.

The prevailing party in any action (i) to collect payment on this Note, (ii) in connection with any dispute that arises as to its enforcement, validity or interpretation, whether or not legal action is instituted or prosecuted to judgment, or (iii) to enforce any judgment obtained in any related legal proceeding shall be entitled to all costs and expenses incurred, including attorney's fees.

If any provision of any word, term, clause, or part of any provision of this Note shall be invalid for any reason, the same shall be ineffective, but the remainder of this Note and of the provision shall not be affected and shall remain in full force and effect.

Any of the terms or conditions of this Note may be waived by Holder, but no such waiver shall affect or impair the rights of Holder to require observance, performance or satisfaction, either of that term or condition as it applies on a subsequent occasion or of any other term or condition of this Note.

Maker understands that Holder had to take out a loan at the rate of 4.50% in order to be able to make this loan to Makers, and that is the reason why this interest rate is being herein. The interest rate provisions in this Note are consistent with Jewish laws "**Al Pi Heter Iska.**"

The Maker hereby represents and warrants to Holder that the Maker is currently in strong financial health.

BKF is a newly formed corporation in need of a loan, and Maker is a major shareholder of BKF. The Maker is issuing fifteen percent (15%) of the total shares of stock of BKF to Holder as security for this Note. Concurrently with this Promissory Note, Maker shall issue a certificate of these shares in favor of Holder. Maker covenants to Holder that so long as any portion of the liabilities herein are outstanding, the 15% shares given to Holder shall not be diluted.

Wherefore, the Maker hereby executes this Note.

"Maker"

ISAAC PERLMUTTER,
An Individual

*[Corporate Guaranty on pages 3 through 5]*

**PAGE 2 OF 5**
(2ND PROMISSORY NOTE)

ISAAC PERLMUTTER                    BIRDBORO KOSHER FARMS CORP.

## CORPORATE GUARANTY
(Second)

WHEREAS, Isaac Perlmutter ("Maker") wishes to borrow money from Yoram Cohen ("Holder") pursuant to the foregoing Secured Promissory Note, dated June 11, 2013 (the "Note"), and Maker intends to make that money available to Birdsboro Kosher Farms Corporation, a Pennsylvania Corporation, with its principal place of business located at 1100 Lincoln Road, Birdsboro, Pennsylvania 19508 ("Guarantor");

WHEREAS, Holder is unwilling to extend such loans to Maker unless and until Guarantor guaranties the obligations of Maker under the Promissory Note;

WHEREAS, Maker is a major shareholder of Guarantor; and

WHEREAS, the Guarantor is willing to guaranty Maker's obligations under the above Promissory Note.

WHEREAS, on February 4, 2013, Maker signed a Secured Promissory Note in favor of Holder, which February 4, 2013 Secured Promissory Note was also guaranteed by Guarantor. The instant promissory note and guaranty are for a new loan made by Holder.

NOW THEREFORE, the undersigned, Guarantor guaranty Maker's obligations under the above Promissory Note in favor of Holder, as follows:

1.    Birdsboro Kosher Farms Corporation's Guaranty – For consideration, the adequacy and sufficiency of which is acknowledged, the undersigned Guarantor unconditionally guaranties and promises (a) to pay to Holder on demand, in lawful United States money, on hundred percent of the Obligations, and (b) to perform on hundred percent of the undertakings of Maker in connection with the Obligations. "Obligations" is used in its most comprehensive sense and includes any and all debts, liabilities, rental obligations, and other obligations and liabilities of every kind of Maker to Holder as provided in the Note executed concurrently herewith, together with all expenses of, for and incidental to collection, including reasonable attorneys' fees.

2.    Authorization – Guarantor hereby authorizes Holder, without notice and without affecting Guarantor's liability under this corporate guaranty, from time to time, whether before or after any revocation of this corporate guaranty, to (a) renew, compromise, extend, accelerate, release, subordinate, waive, amend and restate, or otherwise amend or change the interest rate, time or place for payments or any other terms of all or any part of the Obligations; (b) accept delinquent or partial payments on the Obligations; (c) take or not take security or other credit support for this corporate guaranty or for all or any part of the Obligations, and exchange, enforce, waive, release, subordinate, fail to enforce or perfect, sell, or otherwise dispose of any such security or credit support; (d) apply proceeds of any such security or credit support and direct the order or manner of its sale or enforcement as Bank, at its sole discretion, may determine; and (e) release or substitute Maker or any guarantor or other person or entity liable on the Obligations.

**PAGE 3 OF 5**
(2^(ND) PROMISSORY NOTE)                    ISAAC PERLMUTTER            BIRDBORO KOSHER FARMS CORP.

4.     Waivers – To the maximum extent permitted by law, Guarantor hereby waives (a) all rights to require Holder to proceed against Maker or proceed against, enforce or exhaust any security for the Obligations or to marshall assets or to pursue any other remedy in Holder's power whatsoever; (b) all defenses arising by reason of any disability or other defense of Maker, the cessation for any reason of the liability of Maker, any defense that any other indemnity, guaranty or security was to be obtained, any claim that Holder has made Guarantor's obligations more burdensome or more burdensome than Maker's obligations, and the use of any proceeds of the Obligations other than as intended or understood by Holder or Guarantor; (c) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this corporate guaranty and of the existence or creation of new or additional Obligations, and all other notices or demands to which Guarantor might otherwise be entitled; (d) all conditions precedent to the effectiveness of this Guaranty; (e) all rights to file a claim in Connection with the Obligations in an Insolvency Proceeding filed by or against Maker; (f) all rights to require Holder to enforce any of its remedies; and (g) until the Obligations are satisfied or fully paid, with such payment not subject to return, (i) all rights of subrogation, indemnification or reimbursement, (ii) all rights of recourse to tiny assets or property of Maker, or to any collateral or credit support for the Obligations, (iii) all rights to participate in or benefit from any security or credit support Holder may have or acquire, and (iv) all rights, remedies and defenses Guarantor may have or acquire against Maker.  Holder may foreclose, either by judicial foreclosure or by exercise of power of sale, any deed of trust which secures any Obligations, and even though such foreclosure or exercise may destroy or diminish Guarantor's rights against Maker, Guarantor shall remain liable for any part of the Obligations remaining unpaid after foreclosure.

5.     Guarantor to Keep Informed – Guarantor warrants having established with Maker adequate means of obtaining, on an ongoing basis, such information as Guarantor may require concerning all matters bearing on the risk of nonpayment or nonperformance of the Obligations. Guarantor assumes sole, continuing responsibility for obtaining such information from sources other than from Holder.  Holder has no duty to provide any information to Guarantor until Holder receives Guarantor's written request or specific information in Holder's possession and Maker has authorized Holder to disclose such information to Guarantor.

6.     Subordination – All obligations of Maker to Guarantor which presently or in the future may exist ("Guarantor's Claims") are hereby subordinated to the Obligations. At Holder's request, Guarantor's Claims will be enforced and performance thereon received by Guarantor only as a trustee for Holder, and Guarantor will promptly pay over to Holder all proceeds recovered for application to the Obligations without reducing or affecting Guarantor's liability under other provisions of this corporate guaranty.

7.     Counsel Fees and Costs – The prevailing party shall be entitled to attorney's fees (including a reasonable allocation for Holder's internal counsel) and all other costs and expenses which it may incur in connection with the enforcement or preservation of its rights under, or defense of, this corporate guaranty or in connection with any other dispute or proceeding relating to this corporate guaranty whether or not incurred in any Insolvency Proceeding, arbitration, litigation or other proceeding.

8.  <u>Warranty of Authority</u> – Guarantor represents and warrants that Guarantor has the corporate power to enter into this corporate guaranty and to carry out its obligations hereunder. The execution and delivery of this corporate guaranty and the performance of the Guarantor's obligations hereunder have been duly authorized by the Board of Directors of the Guarantor, and no other corporate proceedings on the part of the Guarantor are necessary to authorize such execution, delivery and performance. This corporate guaranty has been duly executed by the Guarantor and is the legal, valid and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms.

9.  <u>Notice</u> – Any notice, including notice of revocation, given by any party under this corporate guaranty shall be effective only upon its receipt by the other party and only if (a) given in writing and (b) personally delivered or sent by United States mail, postage prepaid, and addressed to Holder or Guarantor at their respective addresses indicated below. Guarantor and Holder may change the place to which notices, requests, and other communications are to be sent to them by giving written notice of that change to the other.

10.  <u>California Law to Apply</u> – This corporate guaranty shall be governed by and construed according to the laws of California, and Guarantor submits to the non-exclusive jurisdiction of the state or federal courts in California.

11.  <u>Interest on Loan</u> – The interest rate provisions applicable to this corporate guaranty are consistent with Jewish laws "Al Pi Heter Iska."

"Guarantor"
**BIRDSBORO KOSHER FARMS CORP.**

By: _____
       Isaac Perlmutter
Its:   Chief Executive Officer

**PAGE 5 OF 5**
(2ND PROMISSORY NOTE)                  _____     _____
                                        ISAAC PERLMUTTER      BIRDSBORO KOSHER FARMS CORP.

FRI – 14 JUN 10:30A
PRIORITY OVERNIGHT

90067
CA-US
LAX

fedex.com 1.800.GoFedEx 1.900.463.3339

NC CIBA

8025 2896 5003

FedEx
Express · US Airbill

**1 From**
Date 6.13.13
Sender's Name ___ Kenworthy ___ Phone 610-804-6001
Company Bayfield Ashley Farms Corp.
Address 1100 Ardmore Rd
City Ardmore  State PA  ZIP 19051

**2 Your Internal Billing Reference**

**3 To**
Recipient's Name Raan Mishal  Phone 310-286-2000
Company Century City Law Group APC
Address 1875 Century Park East Ste
Address
City Los Angeles  State CA  ZIP 90067

**4 Express Package Service**

**5 Packaging**

**6 Special Handling and Delivery Signature Options**

**7 Payment** Bill to

644

**B**
5003
06.14

K-1 545
F-2 544

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robin Mashal (California State Bar No. 205003)<br>CENTURY CITY LAW GROUP, APC<br>1875 Century Park East, Sixth Floor, Los Angeles, California 90067-2507<br>TELEPHONE NO.: (310) 286-2000    FAX NO.: (310) 286-2525<br>ATTORNEY FOR *(Name):* Yoram Cohen, Plaintiff | **FILED**<br>Superior Court Of California<br>County Of Los Angeles<br><br>AUG 13 2014<br><br>Sherri ~. ~~~~~ Executive Officer/Clerk<br>By ~~~~~~~ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Yoram Cohen vs. Birdsboro Kosher Farms Corp., et. al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 5 5 4 5 9 2<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[X] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary   b.[X] nonmonetary; declaratory or injunctive relief   c.[X] punitive
4. Number of causes of action *(specify):* Eleven
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 7, 2014

Robin Mashal
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>*LexisNexis® Automated California Judicial Council Forms* |

ORIGINAL

| SHORT TITLE: Yoram Cohen vs. Birdsboro Kosher Farms Corp. | CASE NUMBER  BC 5 5 4 5 9 2 |
| --- | --- |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL  6 ___  ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- |
| **Auto Tort** — Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** — Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

ORIGINAL

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

| SHORT TITLE: | Yoram Cohen vs. Birdsboro Kosher Farms Corp. | CASE NUMBER |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☑ A6009  Contractual Fraud | 1., 2., ③, ⑤ |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Yoram Cohen vs. Birdsboro Kosher Farms Corp. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE: Yoram Cohen vs. Birdsboro Kosher Farms Corp. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐1. ☐2. ☑3. ☐4. ☑5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>8730 West Pico Boulevard |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90035 |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _Stanley Mosk_ courthouse in the _Central Judicial_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: August 11, 2014

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4